## JAMES FARNESLY v. PATRICK MURPHY.

1792.

THIS was an action of *indebitatus assumsit* for money had and received. In the year 1785, *Patrick Murphy* bought from *James Farnesly,* an out-lot, improved and occupied by *Farnesly*, of twenty-one acres, near the town of *Pittsburgh*; for which he agreed to pay 40*s.* per acre, if at a certain time thereafter, which was then fixed by the parties, the proprietaries should not have granted a patent or deed for it, to any other person. No patent was granted at the time fixed, nor some time after, when *Murphy* himself was in *Philadelphia*, and might, as he undertook to do, have obtained a patent, in his own name. But *Murphy* procured one *De Byerly* to lend his name, to take out a patent for the land, and convey to him. *Murphy* paid the purchase money and fees, and gave *De Byerly* a bottle of wine, for his service. When *Murphy* returned home, he told *Farnesly*, that the land had been granted to another, from whom he was obliged to purchase, and therefore he could not pay him. It was the custom of the proprietaries, in giving titles in the manor of *Pittsburgh*, to prefer settlers to any other; and they have even refused to grant deeds to some, for land or lots, which others had improved; reserving them for the improvers, when they should apply. If *Farnesly* had not sold, he would, from the usual indulgence of the proprietaries, have got a patent for this land, in preference to any other; and as *Murphy* had bought from him, he would have had the same preference. Land, such as this, and near it, has been sold for 10*l.* per acre.

*Brackenridge* and *Young*, for the defendant, faintly controverted the fraud, and insisted, that the plaintiff could not recover by *assumsit* for money had and received, on such a case as this; and for this cited *Nightingale v. Devisine.*

5 Burr. 2592.

*Ross* and *Woods*, for the plaintiff, read and relied on what is said by *Lord Mansfield* in *Moses* and *M'Farlane*, and in *Hawkes v. Saunders.*

2 Burr. 1012.
Cowp. 290.

PRESIDENT. There are three questions.—1. Has the plaintiff any just demand, against the defendant?

2. Has he brought it forward in a proper shape?

3. And, if he has, how much ought he to recover? 1792.

1. The merits are clear for the plaintiff. He fold only his claim and poffeffion, not the title ; this the defendant undertook to procure himfelf from the proprietary. The defendant got from the plaintiff all that was promifed him ; all that he then expected ; all for which he was to pay to the plaintiff 42*l.* and this he ought to have paid.

2. The objection to the form of the action is better 2 *Burr.* 1007. founded, and ftrong. But courts have been daily enlarging the liberality of this action, and leaning more 651. againft nonfuiting a plaintiff, with juftice on his fide. *H Bla.* 641. The cafes neareft the prefent, in which this form of action has been held to lie; are *Clarke v. Shee*, for notes, 91. and *Longchamps v. Denny*, for a mafquerade ticket. And *Lofft.* 756. if you prefume, that the defendant has fold the land, and *Doug.* 132. received the worth of it, your prefumption will be fomething like that in the cafe of the mafquerade ticket. There is another prefumption, which may be made, to fupport this action, from the defendant's having received the profits of the plaintiff's poffeffion and improvement. The beft form of action furely has not been chofen ; but the objection is unreafonably extended, in faying, that the money muft not only have been received by the defendant, but paid by the plaintiff. It is 2 *Burr.* 1009: clearly enough if the defendant have received money *Cowp.* 290— from the plaintiff's property, or for the plaintiff's ufe, 4. from any body. The objection is not exclufively directed to us, by a motion for a nonfuit ; but to you alfo *See Porter v.* on a general verdict. We fhall not direct a nonfuit. *Brown, poft.*

3. As to the quantity of damages. Some cafes, where there is a juft or reafonable caufe for retaining the money, till there has been a legal inveftigation, might juftify a jury in refufing even intereft to a plaintiff. In fome cafes damages ought to be meafured by the lofs of the plaintiff ; in fome, perhaps, by the gain of the defendant, proceeding from the unjuft detention. And in fome cafes, it is proper to give exemplary damages. Indeed thefe remarks which would have applied to a fpecial *affumfit*, are lefs proper in the prefent form of 2 *Burr.* 1005 action, which goes only for the money fuppofed to have —1012. been actually received. But this cafe is highly fraudulent.

C 4

*[margin references: 2 Burr. 1007. 3 Burr. 1243. Doug. 628— 651. H Bla. 641. Cowp. 289—91. Cowp. 197, Lofft. 756. Doug. 132.]*

1792.    The jury returned with a verdict for the plaintiff for 159*l*. 12*s*. 9¼*d*. damages.

NOTE.—This verdict was the first within my notice, where the jury went any considerable length, to punish fraud, by penal damages. The example deserves imitation, and if it were generally followed, little or less inconvenience would flow from the want of power to decree a specific performance. The verdict appeared (from a paper which the jury handed to the prothonotary) to have been made up thus:—

|          | *l*. | *s*. | *d*. |
|----------|------|------|------|
| Debt,    | 42   | 0    | 0    |
| Interest,| 17   | 12   | 9½   |
| Damages, | 100  | 0    | 0    |
|          | 159  | 12   | 9½   |

A motion for a new trial was talked of, on the ground, that *indebitatus assumsit* being of the nature of an action of debt, the jury could give no more damages than the interest. But the parties accommodated the matter; the defendant paid, I believe, 112*l*. and we heard no more of it.